IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**LISA ROBINSON**                                                                               **PLAINTIFF**

**VERSUS**                                                 **CIVIL ACTION NO. 3:14cv832-TSL-RHW**

**CAROLYN COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY**                                                                          **DEFENDANT**

REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Lisa Robinson filed this action October 27, 2014 seeking judicial review of the denial of her claim for Social Security disability insurance benefits and Supplemental Security Income (SSI).  Robinson claims the Social Security Commissioner's decision must be reversed based on new evidence she submitted to the Appeals Council and because the Administrative Law Judge failed to give proper weight to her treating physician's opinion.

Facts and Procedural History

On August 4, 2011, Robinson filed applications for disability insurance benefits and SSI, alleging she became disabled July 15, 2011 at age 25.  Specifically, Robinson asserted disability due to discogenic and degenerative back conditions and anxiety disorders.  [9, pp. 93, 105-106, 138-141, 142-150]  The claim was denied initially on October 11, 2011, and on reconsideration on November 10, 2011.  [9, pp. 109-113, 118-121]  Administrative Law Judge (ALJ) Margaret Sullivan conducted a hearing on Robinson's claim on May 14, 2013.  Robinson and her attorney attended the hearing, where Robinson and Vocational Expert Donald E. Woodall testified.  [9, pp. 29-56]  On July 25, 2013, ALJ Sullivan issued her 11-page decision finding Robinson "has not been under a disability, as defined in the Social Security Act, from July 15, 2011" through

1

the date of the decision. [9, pp. 15-25]  The Appeals Council denied review of the ALJ decision on October 1, 2014 [9, pp. 4-9], prompting the filing of the action presently before this Court.

According to her hearing testimony, Robinson was born in October 1985.  She is a high school graduate and has a six-year-old daughter.  She last worked at Fred's in 2011 as a cashier and stocker.  She left that job due to disagreements with a customer who accused her of being rude, and with her manager who fired her.  She has sought no work since that time, because her back hurt all the time she worked.  Robinson claims she cannot sit long because her left leg goes numb, with sharp pains up and down the leg, and that she has regular (daily) panic attacks lasting 15-20 minutes at a time, and can't be around a crowd of people.  Robinson described her typical day as rising at 6:00 a.m. to get her daughter dressed and see her off on the bus for school.  Her mother helps by fixing the child's hair and putting her shoes on and tying them, because Robinson is "unable to reach above [her] head" or to "bend down."  Robinson then reads or sits around, until the child returns from school.  She testified she is unable to do household chores.  Her parents take care of washing dishes, laundry, mopping, sweeping, *etc*.[1]  She tries to help, but is unable do even things like folding clothes or washing dishes.[2]  Robinson has never had a driver's license, and stated she cannot drive because her leg goes numb.  Questioned about whether she knows how to use a computer or cell phone, she responded, "not so much," although she previously worked selling phones at Wal-Mart.

---

[1]Robinson lives with her parents, ages 59 and 54, both of whom are listed as disabled.  She pays nothing for rent, food or household expenses.  [9, pp. 143-44]

[2]In September 2011, Robinson described her day as getting up at different times, around 7:00 or earlier when her back pain gets too bad; doing a little housework, fixing something quick that doesn't take too much work, showering, watching TV and taking medicine to help her sleep. She stated she cared for her then four-year old daughter with help from her parents.  She also stated she cannot raise her arms too high to put a shirt on, cannot bend down, and that friends and family help brush and fix her (Robinson's) hair.  She has to sit down to shave her legs, and she sits at a table to eat.  With reference to household chores, she stated all she is able to do is laundry, cleaning and a little cooking.  She goes out to eat once a week and goes grocery shopping with her parents. [9, p. 179]

Robinson testified she worked for Wal-Mart in 2006, doing "pretty much everything" and was "in HBA, jewelry, electronics where [she] sold phones." [9, p. 41]  She also did cashier duty and stocked.  She worked briefly at Dollar General, then at Pico Foods where she "stood up mainly separating chicken all day."[3]  Robinson testified she first started having back trouble in late 2010 and that she has constant pain in her back, neck and left butt-cheek.  Medications prescribed by her doctors help, and she takes some over the counter pain relievers, and Ambien to help her sleep, though she does not sleep well, getting up ten or more times through the night to go to the bathroom.  Robinson testified she can sit or stand about 20 minutes at a time; that she cannot bend past her knees, or stoop or squat; she could climb steps but it would increase her pain.  She has sharp left leg pains and wears a back brace[4] most days which helps some.  She estimates that in a 30-day period, she has two good days (when the pain is not as severe) and 28 bad days (when she cannot get out of bed due to pain).  She does not drink alcohol or take recreational or street drugs, but does smoke.[5]  She watches television but has trouble concentrating; she reads some and then has migraine headaches.

Robinson testified her left eye is weaker than the right,[6] and that she has been told she would probably go blind by age 30 due to cataracts, but she does not want surgery.  She also testified she was depressed due to her back pain and did not want to live with it; that after witnessing a suicide (of her boyfriend's father) on June 19, 2012, she "lost her mind" and wanted to get on some medicine to help her; and that she has mood swings daily "thinking about the

---

[3]Records show this was in 2010. [9, pp. 155, 174]

[4]Her records indicate she requested the back brace. [9, p. 256]

[5]Medical records alternately indicate Robinson does not use tobacco, and that she is a smoker, tobacco dependent. and smokes about a pack of cigarettes a day. [9, pp. 233, 278, 297, 303-4, 305-6]

[6]Robinson has worn eyeglasses since she was a child. [9, p. 185] The record contains no specific medical evidence about her vision.

past." In April 2012 she reported arguing daily with her boyfriend. [9, p. 281] Robinson stated she was in an abusive relationship for nine years with the father of her child. She testified she goes nowhere alone, does not leave the house to visit friends, and just stays at her parents' home. She goes shopping with her parents and a friend visits her every other weekend. Her parents help her make decisions. She has daily crying spells. [9, pp. 35-51]

Vocational Expert Woodall testified Robinson has been a poultry worker which is light unskilled work; a cashier retail stocker - light unskilled; retail stocker - heavy semiskilled; restaurant hostess - light semiskilled; and a cleaner at Holiday Inn - light unskilled. Considering Robinson's age, educational background and work history, limited to light duty work with restrictions requiring that she be allowed to sit/stand alternately every 30 minutes, have only occasional contact with the public and coworkers, and have only simple instructions, Woodall testified there are jobs in the national or regional economy she could perform. Those jobs are bench assembler, light unskilled work (20,000+ jobs in the national economy); small parts assembler, light unskilled work (60,000+ jobs in the national economy); and laundry folder, light unskilled work (10,000+ jobs in the national economy). Mr. Woodall testified there would be no work Robinson could do if she had to lie down at unpredictable intervals, had to miss more than three days work a month, if pain prevented her from concentrating or staying on task for two-hour segments, or if she were unable to deal with the stress of a job, with supervisors or coworkers.

## Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards. *Perez*

*v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision. *Villa*, 895 F. 2d at 1022. Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court. It is not the Court's prerogative to substitute its judgment for that of the Commissioner or to re-weigh the evidence. *Harris v. Apfel*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F. 2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F. 3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Analysis

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). It was Robinson's burden to prove a disability which precluded her from engaging in substantial gainful work during the pendency of her applications for benefits. *Masterson v. v. Barnhart*, 309 F. 3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991); *Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991). It was also her burden to produce evidence to support her claims. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (suffering of some impairment does not establish disability under the Act, claimant must prove she is "incapable of engaging in *any* substantial gainful activity").

The record shows ALJ Sullivan applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i-v). Step one requires a determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work activity that involves significant physical or mental activities and is usually done for pay or profit. Judge Sullivan found Robinson had not engaged in such activity since July 15, 2011.

Step two requires determination of whether the claimant has a medically determinable impairment or combination of impairments which meets the duration requirement and is severe, *i.e.*, which significantly limits her ability to perform basic work activities. ALJ Sullivan found Robinson has severe impairments of degenerative disc disease, bipolar disorder, and post-traumatic stress disorder (PTSD) which significantly limit her ability to perform work activities.

Step three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment/combination of impairments is of such severity and meets the duration requirement, the claimant is disabled; if it is not, the analysis continues to step four.  Judge Sullivan found Robinson "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  In making this finding the ALJ specifically referred to Exhibits 1-3F [9, pp. 227-238] and 5-10F[7] [9, pp. 244-316], and stated, "No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." [9, pp. 17-18]  Carefully detailing the record evidence and citing to the specific exhibits upon which she based her finding, ALJ Sullivan also found Robinson's claimed mental impairments neither singly nor in combination meet or medically equal the criteria of listings 12.04 and 12.06.

At the fourth step of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity, *i.e.*, her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments and (2) whether she  has the residual functional capacity to perform the requirements of her past relevant work.  If claimant can perform the

---

[7]The exhibits are: 1F-Dr. Soriano's disability report form; 2F-Dr. Pasha's consultative examination; 3F-Anderson South radiology report of lumbar spine dated 9/13/2011, demonstrating no significant abnormality; 5F-Dr. Soriano's progress notes from September 2011 to March 2013; 6F-Weems Community Mental Health Center records dated January 2012-March 2013; 7F-Rush Hospital radiology report of lumbar spine MRI dated 3/4/2011; 8F-Dr. Soriano's progress note dated April 2013; 9F-Neshoba County Hospital record dated 9/7/2012 for complaints of sore throat, chills, fever and earache with clinical impression of upper respiratory infection, and 9/24-25/2011 hospitalization for pneumonia; and 10F-Alliance Health Center July 10-17, 2012 records for treatment of bipolar disorder.

requirements of her past relevant work, she is not disabled; if she cannot, the inquiry proceeds to the fifth and final step of the evaluation. ALJ Sullivan found Robinson unable to perform her past relevant work as a poultry worker which is light, unskilled work with a specific vocational preparation (SVP) level of two; a retail worker/cashier which is light, semi-skilled work, SVP level three; a stocker, heavy semi-skilled work, SVP level four; restaurant hostess, light semi-skilled work SVP level three; or as a cleaner at a hotel, light unskilled work SVP level two. [9, p. 23] The ALJ further found, based upon the entire record, that Robinson has the residual functional capacity to perform light work with additional limitations that she be able to change positions between standing and sitting every thirty minutes, and that the work involve only simple instructions and require no more than occasional contact with the public.

     Step 5 involves consideration of the assessment of claimant's residual functional capacity, age, education and work experience to determine whether she can make an adjustment to any other work. One capable of making such an adjustment is not disabled. To support a finding that a claimant is not disabled at this step, the Social Security Administration must provide evidence demonstrating that other work which the claimant can do exists in significant numbers in the national economy. Considering the above criteria, Vocational Expert Woodall identified existing jobs Robinson can do.

     The ALJ found Robinson's conditions could be expected to produce pain and other symptoms such as those Robinson described, but also found that the objective medical findings of record failed to substantiate Robinson's claims as to the "intensity, persistence and limiting effects of her allegedly disabling symptoms." Considering all the record evidence, the ALJ found Robinson's statements/allegations "less than fully credible..." [9, p. 21] Explaining this finding, the ALJ noted that Robinson's treatment has been of a generally routine, conservative

nature; she has been prescribed and taken essentially the same medications without significant change throughout the pendency of her claim; she has required inpatient mental health treatment on only one occasion, where she improved with medication, but then she stopped taking the medication on her own;[8] and despite her complaints of constant, disabling back pain, Robinson has not been referred to a specialist for any further evaluation or treatment. The ALJ also noted record evidence that Robinson had reported being able to cook, clean, do laundry, handle money, go shopping, go out to eat, and care for herself and her child; and that her descriptions of her symptoms were inconsistent with those reflected in her medical records. ALJ Sullivan supported this finding with numerous specific factual references cited to the record.[9]

Robinson charges error in the administrative proceedings on two grounds. First, she contends she presented "new and material" evidence to the Appeals Council, which was unavailable at the time of the ALJ hearing, and which would likely have resulted in a different ruling. The new evidence consists of a September 5, 2013 assessment by Noel Palmer, a Nurse Practitioner at Weems Mental Health Center [11, pp. 41-44], where "Plaintiff was seen 23 times of record for her psychiatric problems." [11, p. 11] Since this opinion was not included in the transcript, Plaintiff contends it is unclear whether the Appeals Council reviewed it. Plaintiff is mistaken. The record clearly reflects that the Appeals Council reviewed Palmer's assessment:

> We also looked at a medical assessment from Noel Palmer dated September 5, 2013 (5 pages). The Administrative Law Judge decided your case through July

---

[8]See, *e.g.*, Weems Mental Health records of February 19, 2013 - she thought she did not need medication anymore; August 10, 2012 - she stopped taking medications because they "were not working..." [9, p. 272] Seven of seventeen records state Robinson was not "medication compliant." [9, pp. 262, 264, 265, 268, 269, 271, 272]

[9]The undersigned also saw in Robinson's medical records that in September 2011, just two months after she stopped working according to her benefits application and testimony, she gave a history of having been "out of work since 07/2010." [9, p. 233] In February 2012 she again gave a history of being unemployed since July 2010. [9, p. 284] Her records show she worked through 2010, and reported her second highest annual earnings that year. [9, p. 157]

>25, 2013. This new information is about a later time. Therefore it does not affect the decision about whether you were disabled ... on or before July 25, 2013.

[9, p. 5] Plaintiff's conclusory statement that her new evidence is "plainly related to the time period for which disability benefits were denied" [11, p. 13] is insufficient to overcome the finding of the Appeals Council. The assessment is dated September 5, 2013, and nothing in the document indicates it is anything other than Palmer's opinion about Robinson's level of functioning at that time. Furthermore, if Palmer's assessment were to be deemed related to the period for which disability benefits were denied, it would be based on the same treatment records (Exhibit 6F) which the ALJ has already considered in making her decision. [9, pp. 257-291] Those records show Robinson's last visit was March 6, 2013, and the undersigned notes they show that of the 23 times she went to Weems Mental Health, Robinson saw Palmer only twice: on July 9, 2012 and February 19, 2013. [9, pp. 274-75, 259-60]. This undercuts Robinson's reliance on *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) with respect to Palmer's opinion. Unlike *Ripley*, Robinson has presented no record of any new medical treatment or findings which was unavailable at the time of her hearing. At best, she has presented a belated assessment of available medical records which were, in fact, considered by the ALJ. Robinson has also failed to show good cause for not providing this "new" evidence in the original proceedings. *Id*., 67 F.3d at 555.

*Moore v. Astrue*, 2010 WL 2838404 (N.D. Miss. July 1, 2010), is more factually similar to Robinson's case. After the ALJ denied Moore's disability claims, Moore submitted for consideration by the Appeals Council a post-decision report from a certified rehabilitation consultant. The Court held the consultant's report, which repeated the claimant's own stated limitations and recited information contained in the medical records which the ALJ had

reviewed, did not present any new and material evidence justifying remand.  The ALJ also found Moore had not shown good cause for failing to present the evidence in the original proceeding just because the evaluation was conducted after the ALJ's determination.  The undersigned finds the same rationale defeats Robinson's argument in the case at bar: Palmer's assessment is not new material evidence, and Robinson has not shown good cause for failing to present it in the original proceedings.

Robinson's second asserted error is that ALJ Sullivan failed to give proper weight to Dr. Soriano's opinion that Robinson can essentially do no work.  Dr. Soriano is the treating physician whom Robinson first saw in 2011. [9, p. 176]  The administrative record documents Robinson had seven office visits in 2011, five in 2012 and four in 2013.  After seeing Robinson three times in 2011, Dr. Soriano prepared a disability report form finding no abnormalities other than neurological and musculoskeletal, which he described as spondylosis and HNP L2-L3. [9, p. 228]

Dr. Soriano's November 2012 opinion as to Robinson's ability to do work-related activities indicates that Robinson was limited to lifting/carrying less than ten pounds, and in an eight-hour day could stand, or walk, or sit less than two hours; that she could not sit or stand more than five minutes without changing position[10] and would sometimes need to lie down.  The only medical findings he provided to support those limitations were, "bad back, sharp pains in left leg, numbness." [9, pp. 239-40]  This is the opinion which ALJ Sullivan rejected, noting that Robinson had provided no specificity as to her allegedly disabling symptoms; her medical records generally referred only to low back pain with left-sided lumbosacral radiculitis; Dr.

---

[10]Robinson said she could sit or stand for 20 minutes at a time without having to change position. [9, pp. 42-43]

Soriano's records reflected no "detailed symptom descriptions or functional limitations voiced by Robinson;" and despite her complaints of constant pain, Robinson reported daily activity including walking and exercising to reduce pain and improve her symptoms. The ALJ found Dr. Soriano's opinion unsupported by his own records,[11] unsupported by other treatment records in evidence, and contradicted by Robinson's own statements regarding her activities. As a result, ALJ Sullivan found the results of Dr. Pasha's consultative physical examination more reliable. [9, p. 23] An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Furthermore, ALJ Sullivan personally observed that during the 45-minute hearing Robinson expressed no need to change positions or move about for pain relief. Administrative Law Judges are allowed to consider their own observations during a hearing. *See Gutierrez v. Barnhart*, 2005 WL 1994289, *6-8 (5th Cir. 2005).

In *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005), the Court held that opinions, diagnoses, and medical evidence of a treating physician familiar with the claimant's condition, treatment and responses are generally accorded considerable weight in determining disability, but the doctor's opinions are not conclusive. The ultimate decisions as to residual functional capacity and disability are for the Commission. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). Where a treating physician's opinion is conclusory, or without objective medical evidence supporting it, or otherwise unsupported by the record or inconsistent with the record as a whole, the general rule does not apply and the ALJ may give the opinion little or even no weight. *Id*.; 20 C.F.R. § 404.1527(c). In light of ALJ Sullivan's affirmative statement that she

---

[11]Even the summary of records prepared by Robinson's attorney shows her visits to Dr. Soriano were essentially for check-up and medication refills, and repeat the same diagnoses. [9, pp. 210-214]

considered the opinion evidence in accordance the factors set out in 20 CFR 404.1527 and 416.927,[12] and her explanation for rejecting Dr. Soriano's opinion, the undersigned finds no merit in Robinson's contention that the ALJ failed to consider the relevant factors.  The ALJ articulated reasons for rejecting Dr. Soriano's opinion which are supported by substantial record evidence.  This is sufficient.  "The ALJ need not recite each factor as a litany in every case." *Johnson v. Astrue*, 2010 WL 26469, at *4 (N.D. Tex. Jan. 4, 2010).

## RECOMMENDATION

Based upon consideration of the entire record of proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards.  Accordingly, the undersigned recommends that [10] Robinson's motion for summary judgment be denied, the Commissioner's motion to affirm [12] be granted, and the decision of the Commissioner, affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file with the Clerk any written objections to it.  Within seven days of service of objections, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.  An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections.  A party who fails to file written objections to the

---

[12]Factors include: length of treatment relationship and frequency of examination, medical evidence supporting the opinion, and consistency with the record as a whole.

proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy is barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 20th day of October, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE